UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAY SANTANA and BRENDAN DUFFY,

                     Plaintiffs,

      -against-

MOUNT VERNON CITY SCHOOL
DISTRICT/BOARD OF EDUCATION; KENNETH
HAMILTON, Superintendent of Schools; DENISE
GAGNE-KURPIEWSKI, Assistant Superintendent
for Human Resources; FELICIA GAON, Director of
Student Services; RONALD GONZALEZ, Mount
Vernon High School Principal; PAULINE PALMER-
PEARCE, Mount Vernon High School Assistant
Principal; ERICA NAUGHTON, Mount Vernon High
School Mathematics Department Supervisor; SATISH
JAGNANDAN, District Supervisor of Mathematics
and Science,

                     Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

**__ Civ. ___**

Plaintiffs RAY SANTANA and BRENDAN DUFFY, by their attorneys, GLASS

HARLOW & HOGROGIAN LLP, as and for their Complaint against Defendants,

respectfully allege as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs jointly bring this action against Defendant Mount Vernon City

School District and/or the individual defendants for violations of the Americans with

Disabilities Act ("ADA") for discrimination and retaliation based on their disabilities and

for failure to reasonably accommodate their disabilities.  In addition, Plaintiffs bring this

action based on age discrimination and retaliation under the federal Age Discrimination in

Employment Act ("ADEA").

2.     Plaintiff Brendan Duffy also brings pendent state law claims for disability and age discrimination under the New York State Human Rights Law ("NYSHRL").

3.     Plaintiffs seek economic, compensatory damages and punitive damages to the extent allowable by law, and for other appropriate legal and equitable relief pursuant to federal and state law.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

5.     This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the Mount Vernon City School District is located at 165 North Columbus Avenue, Mount Vernon, NY 10553, in Westchester County.

6.     This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     This Court has supplemental jurisdiction over Plaintiff Duffy's state and law claims under 28 U.S.C. § 1367(a).

## PARTIES

8.     At all times relevant herein, Plaintiffs Ray Santana and Brendan Duffy were and are tenured teachers employed by the Mount Vernon City School District.

9.     At all times relevant herein, Defendant Mount Vernon City School District/ Board of Education is a school district within the State of New York.

10.     At all times relevant herein, Defendant Kenneth Hamilton was and is the Superintendent of Schools employed by the District.

2

11.     At all times relevant herein, Defendant Ronald Gonzalez was and is the Principal of Mount Vernon High School, employed by the District.

12.     At all times relevant herein, Defendant Pauline Palmer-Pearce was and is an Assistant Principal at Mount Vernon High School, employed by the District.

13.     At all times relevant herein, Defendant Felicia Gaon was and is the Director of Student Services, employed by the District.

14.     At all times relevant herein, Defendant Denise Gagne-Kurpiewski was Assistant Superintendent of Human Resources, employed by the District.

15.     At all times relevant herein, Defendant Erica Naughton was and is the Mathematics Department Supervisor at Mount Vernon High School, employed by the District.

16.     At all times relevant herein, Defendant Satish Jagnandan was and is the districtwide Supervisor of Mathematics and Science within the Mount Vernon City School District, employed by the District.

**STATEMENT OF FACTS FOR RAY SANTANA**

17.     Ray Santana is a 63-year-old male of Puerto Rican descent and a disabled Vietnam era war veteran who previously served as part of the military in the United States Air Force.

18.     Mr. Santana is disabled under the definition of the Americans with Disabilities Act (ADA) based on his disabilities, related to ongoing injuries to his left knee sustained on December 8, 2011, while on the job as a teacher, and prior injuries to the left knee on September 23, 1975, while serving in the U.S. Air Force during Hurricane Eloise.

19.     Mr. Santana was honorably discharged from the United States Air Force due to injuries he sustained while proudly serving his country.  Mr. Santana has been classified by the U.S. Veterans' Administration as having served during the time of war and peace. Mr. Santana has also been classified by the Veterans' Administration with dysthymic disorder.

20.     Mr. Santana has been employed by the Mount Vernon City School District for over 18 years as a technology teacher, a special education teacher, and/or a library media specialist since September 2001.

21.     As a tenured teacher, Mr. Santana has obtained permanent certifications conferred by the New York State Department of Education, in the areas of elementary education and special education.

22.     Mr. Santana also is certified by the New York State Education Department as a school media specialist, which has essentially the same certification requirements as the position of school librarian or library media specialist.

**2016-17 School Year**

23.     During the 2016-17 school year, Mr. Santana was assigned as a school librarian/media specialist at the Mount Vernon School City School District's Mandella Zollicoffer Alternative High School from September 6, 2016 to June 24, 2017.

24.     During the 2016-2017 school year, while employed as the school librarian, the administration of the Mandella Zollicofer Alternative High School had praised Mr. Santana for his work in the position as a librarian.

25.     On several occasions, both in formal and informal observations, Mr. Frank Gallo, English-language Supervisor for the Mount Vernon City School District, evaluated

4

Mr. Santana as a librarian.  Mr. Gallo praised Mr. Santana for his librarian work and interactions with children of the school as a school librarian.

26.     Mr. Gallo, Mr. Santana's supervisor, wrote a glowing letter of recommendation for his diligent and effective work as a librarian.

### 2017-18 School Year

27.     In September 2017, due to a program reduction just prior to the closing of the Mandela Zollicoffer Alternative High School, the District reassigned Mr. Santana to work as a special education teacher at the Mount Vernon High School, under Principal Ronald Gonzalez, even though there were several open librarian positions available in other schools throughout the District.

28.     Principal Gonzalez assigned Mr. Santana to work as a special education teacher in Room 225 of the high school.

29.     Upon reporting to Room 225 in September 2017, Mr. Santana was assigned a classroom that lacked chairs, desks, computers, or even a blackboard, and was filled with at least two piles of trash.

30.     On or about September 6, 2017 Mr. Santana sent an email to Dr. Corpas, a special education supervisor at Mount Vernon High School, advising her that Room 225 needed desks, chairs, and whiteboard in order to be a functional classroom.  Dr. Corpas directed Mr. Santana to reach out to Principal Gonzalez.  Mr. Santana immediately forwarded the email to Principal Gonzalez, and received no reply for several days.

31.     On or about September 11, 2017, Mr. Santana once again emailed Principal Gonzalez, detailing the poor educational environment of Room 225.  In this email, Mr. Santana referenced broken desks and chairs, no teacher's desk, and a broken computer and

smartboard.  In response to this email, Mr. Gonzalez wrote, "You are expected to deliver instruction to your students. You do not need a teacher's desk to provide instruction."

32.     On or around September 20, 2017, Mr. Santana met with Superintendent of Schools Dr. Kenneth Hamilton regarding his status as a librarian/school media specialist. At that meeting, Mr. Santana spoke with Superintendent Hamilton regarding the deplorable conditions and status of the room to which he was assigned in Room 225 at Mount Vernon High School.  During the meeting, Dr. Hamilton called Principal Gonzalez to speak about Mr. Santana's complaints. Upon disconnecting the call with Principal Gonzalez, Dr. Hamilton told Mr. Santana to report to Principal Gonzalez's office when he returned to Mount Vernon High School.

33.     Upon returning to the high school, Mr. Santana met with Principal Gonzalez, who was in an extremely agitated state, berating Mr. Santana and telling him that he was working in the wrong room.  However, Mr. Santana showed Principal Gonzalez the paperwork he was given indicating his assignment to Room 225, to which Principal Gonzalez angrily directed Mr. Santana instead to go to Room 234.

34.     Upon Mr. Santana's arrival to Room 234, he encountered special education teacher Angela Maddox-Agosto, who was assigned to Room 234 at the beginning of the year and had been teaching in that room since the start of the school year.

35.     After Mr. Santana was assigned to Room 234, Ms. Maddox-Agosto was now effectively forced to work in several different rooms on the first floor of the school.

36.     Approximately two weeks from the date of Mr. Santana's reassignment from Room 225 to Room 234, on or around October 5, 2017, Lillian Ferrell, another senior teacher, was assigned to Room 225, which in the days since Mr. Santana had vacated the

classroom, was still not prepared or restored from the deplorable condition found by Mr. Santana since the beginning of the school year. Classroom 225 was in essence a punishment room used for teachers at the school by Principal Gonzalez.

### 2018-19 School Year

37. As the result of a work-related incident which originally occurred on December 8, 2011, where Mr. Santana was severely injured by a student damaging his left knee, he began the 2018-19 school year still recuperating from said knee injury.

38. During the 2018-19 school year, Principal Gonzalez assigned Mr. Santana five non-regents mathematics courses as the special education teacher at Mount Vernon High School. Mr. Brendan Duffy was assigned as the general education subject area coteacher for the classes.

39. As noted below, Mr. Duffy had his own pre-existing Workers' Compensation injuries to his neck and both knees, which he originally sustained on October 17, 2013, as a result of having been attacked by students at the AB Davis Middle School within the District.

40. Although Principal Gonzalez was aware that Mr. Santana and Mr. Duffy both had work-related injuries and open Workers' Compensation cases, Principal Gonzalez, Assistant Principal Pauline Palmer-Pearce, and Math Department Chairperson Erica Naughton assigned them five ICT (Integrated Co-Teaching) math classes, which consisted of teaching approximately 186 students over five periods of the school day, averaging about 37 students per class period. Most of these students had Individual Education Plans (IEPs), or had formerly taken these math classes but failed, on some occasions more than once.

41.     In fact, the typical number of students assigned to any one class during a school day is approximately 24 students per class period.

42.     In violation of New York State regulations, 4 out of the 5 classes assigned to Mr. Santana and Mr. Duffy were non-compliant with New York State special education regulations, with greater than 12 students or 25% of the class being comprised of special needs students.  This ratio exceeded the amount permissible for an ICT (Integrated Co-Teacher) class as required by special education law.  The third period class had 9 special needs students out of a total of 29 students, which was 31% of the class.  The fourth period class had 12 special needs students out of a total of 29 students, which represented 41% of the class. The fifth period class had 12 special needs students out of a total of 37 students, which represented 32% of the class. The seventh period class had 13 special needs students out of a total of 36 students, which represented 36% of the class.

43.     Because of their work-related injuries, and subsequent disabilities, which restricted their stair climbing use as attested to by doctors' notes they filed with the District, neither Mr. Santana nor Mr. Duffy were unable to retrieve the statistics textbooks they needed for their 8th period class because the textbooks were located on the second floor of the Mount Vernon High School building.

44.     Mr. Duffy sent several emails to Principal Gonzalez, Assistant Principal Palmer-Pearce, and Math Department Chairperson Naughton describing the need for a reduction in student class size for their classes and detailing the necessary compliance requirements with the proper percentage of special needs students per class as required by state education law.

45.     However, the administration took no action in response to the emails, and granted no relief to either Mr. Santana or Mr. Duffy regarding the oversized classes or state non-compliant percentages of special needs students per class.

46.     In November 2018, Mr. Santana underwent knee replacement surgery as a result of a prior on the job injury from a student while at work.  Mr. Santana's left knee had been kicked by a student on December 8, 2011, while breaking up a fight between students. Despite multiple medical treatments to no avail, Mr. Santana had to undergo knee replacement surgery on November 8, 2018.  Because of his knee replacement surgery, Mr. Santana was out of work from November 1, 2018 to March 15, 2019.

47.     When Mr. Santana returned to work on March 15, 2019, Mr. Duffy explained to Mr. Santana that the teacher-to-student ratio as well as non-compliant percentages of special needs students per class had essentially remained unchanged in their co-teaching class. The number of students with disabilities in an integrated co-teaching class may not exceed 25 percent of the total class with a maximum of 12 students with classified disabilities on a class's roster.   Mr. Duffy also explained to Mr. Santana that he had sent numerous emails to Principal Gonzalez, Assistant Principal Palmer-Pearce, and Department Chairperson Naughton requesting either substitute teachers or certified special education teachers for assistance while Mr. Santana was out, which had not been responded to by administration.

48.     As a result of his own workplace injuries, Mr. Duffy was frequently unable to work and often had to miss days, leaving Mr. Santana with an increased workload in oversized classes, while still not completely healed from his own knee replacement surgery. Specifically, Mr. Duffy was absent from work from April 29, 2019 through June 26, 2019,

because of flare-ups of his workers' compensation related injuries to his neck and knees that he sustained after being attacked by students on October 17, 2013.

49.     From March 15, 2019, until June 12, 2019, Mr. Santana sent a total of 10 emails to administration, detailing 19 days that no teaching assistance was provided when Mr. Duffy was absent.  He sent the emails to Assistant Principal Pauline Palmer-Pearce on April 4, 8, 9, 11, 12, 29 as well as on May 17, 22, 29, 31, 2019.

50.     On or about October 8, 2019, as a result of his knee replacement surgery, Mr. Santana requested reasonable accommodations for his disabilities by completing and filing documents provided to him by the Mount Vernon City School District's Human Resources Department. This was Mr. Santana's second filing of reasonable accommodation forms with the District, having previously done so on March 18, 2018.

51.     Mr. Santana had the reasonable accommodations request forms filled out by his primary physician, Dr. Curry, of the Veterans Administration medical clinic in Danbury, Connecticut, and he provided these completed forms to Principal Ronald Gonzalez as well as the school district's Human Resources Department.

52.     The reasonable accommodations Mr. Santana sought included the following: no stair climbing, repositioning every 10-15 minutes, no prolonged sitting or standing, ergonomic seating, the use of a cane for assistance with locomotion, as well as an addendum letter requesting that Mr. Santana be placed with students with stable behavioral outlooks due to his injuries.

53.     In addition to requesting reasonable accommodations because of his left knee replacement surgery, Mr. Santana also sought reasonable accommodations as a disabled Vietnam Veteran, based on a letter from Mr. Michael Rodriguez, LCSW, and

Director of the Danbury Veterans' Center in Danbury CT, supporting the following accommodation requests: ergonomic seating, additional time for reports, voice to text assistance, quiet area during authorized break, and supportive staff when available.  Mr. Rodriguez filled out the necessary reasonable accommodation forms that had been provided by the Mount Vernon City School District. Despite filing of these reasonable accommodation forms, none of Mr. Santana's requests have been accommodated to date.

54.     Despite Dr. Curry's reasonable accommodation recommendations on behalf of Mr. Santana highlighting difficulties in his locomotion as a result of knee replacement surgery, Principal Gonzalez ignored and refused to accommodate these requests, and Mr. Santana was told to teach in one classroom (room 118) with Mr. Duffy throughout the school year.

55.     On or about April 1, 2019, Mr. Santana filed a discrimination charge, which was dually filed with the New York State Division of Human Rights and the U.S. EEOC, alleging, *inter alia*, disability and age discrimination and retaliation.

56.     From April 1 until April 23, 2019, Mr. Duffy was absent from work due to flareups of his workers' compensation connected injuries to his neck and bilateral knees which he sustained on October 17, 2013, as a result of being attacked by several students within the District.

57.     On Mr. Duffy's first day back at school on April 23, 2019, Assistant Principal Palmer-Pearce conducted an unannounced teaching observation of the classroom of Mr. Duffy and Mr. Santana.  This observation violated the union contract with the school district, which stipulates that a teacher cannot be observed twice within the same evaluation

year, by the same evaluator.   AP Palmer-Pearce rated Mr. Duffy ineffective for this observation.

58.     On June 8, 2019, Mr. Santana was scheduled to proctor an exam in room 219, located on the second floor of the high school.  After informing Principal Gonzalez that he could not access the room on the second floor, school safety officer Karen Council was sent to the room classroom to ensure Mr. Santana attended his proctoring duties.

59.     Through the school officer's walkie-talkie, Mr. Gonzalez demanded that Mr. Santana report to the second floor.  Mr. Santana had to take the stairs since the elevator had not worked properly for at least five years, which caused him agonizing pain. The Mount Vernon City School District also has refused to accommodate Mr. Santana by not considering him for a librarian position despite multiple openings for such positions within the District.  The more sedentary librarian position would be a reasonable accommodation for his disabilities that the District repeatedly has refused to honor.

**2019-20 School Year**

60.     At the beginning of the 2019-20 school year, Mr. Santana was assigned to teach special education classes in Room 123 at Mount Vernon High School.  The classes he was assigned to teach were resource room for higher functioning special needs students. Mr. Santana arrived at school on October 2, 2019, while still recovering from left hip surgery.  His left hip was replaced as result of his workers' compensation injury to his left knee.

61.     Upon Mr. Santana's first day at school on October 2, 2019, Principal Gonzalez completely changed his class schedule to lower functioning special needs and alternative education students.   Mr. Santana advised Principal Gonzalez that such a

rescheduling would place him in physical harm's way as he was still recovering from hip surgery.

62.     On or about October 9, 2019 Mr. Santana presented Principal Gonzalez a letter from Dr. Curry, Danbury Veterans' Administration Medical Clinic, requesting that Mr. Santana be placed with students with stable behavior outlooks to reduce his risk of further injury.   Principal Gonzalez refused to amend his schedule despite Dr. Curry's request.

63.     On or about October 10, 2019, Mr. Santana received an email from Assistant Principal Palmer-Pearce indicating that the Sundown program would take care of his scheduling as a resource room teacher for the eighth period in the Sundown Academy. The Sundown Academy is a segregated learning program located within the high school, for students with particular unstable emotional behavioral issues and academic deficiencies. Despite her knowledge of Mr. Santana's reasonable accommodations request, which would endanger him in such an environment, no thought or consideration was given to Mr. Santana's safety and well-being.

64.     On or about October 17, 2019, Mr. Santana sent the first of several emails to Principal Gonzalez and Assistant Principal Palmer-Pearce regarding his reassignment to Room 142.   The email detailed the hostile educational environment of Room 142 which contained broken desks, chairs, broken computers and several piles of trash.   Mr. Santana sent emails and photographs testifying to the deplorable condition of Room 142 on or about December 12, 2019, and February 25, 2020, to Principal Gonzalez and the Assistant Principal Palmer-Pearce.

65.     During the current 2019-20 school year, Mr. Santana uses Room 142 for the second period of the day, yet has been denied the key to access the room during this period. As a result, Mr. Santana and his class often have been forced regularly to wait in the hallway anywhere from 15-30 minutes for the classroom to be unlocked and for him and the students to gain access to the classroom.

66.     On or about November 1, 2019, Ms. Michele O'Bryan, a special education supervisor at Mount Vernon High School, sent Mr. Santana an email explaining that he needed to provide documentation for a student's IEP (Individual Education Plan).  Also included in this same email, Ms. O'Bryan commented on Mr. Santana's reasonable accommodations and detailed her expectations of him to complete his duties as a special education teacher.

67.     On or about November 4, 2019, despite nearly seven months after his initial request for reasonable accommodations from the District, Mr. Santana was notified by Ms. Jessica Graves, a Personnel Associate in the Human Resources Division of the District, that his requests for reasonable accommodations were deemed unreasonable.

68.     On that same day, Mr. Santana received an email from Felicia Gaon, Director of Student Services for the District, detailing why his requests were deemed "unreasonable."  In her email, Ms. Gaon made threats of disciplinary action alleging insubordination against Mr. Santana for not properly performing his job duties.

69.     To date, Mr. Santana's reasonable accommodation requests have not been adequately addressed, and 97 sick days awarded to him via the workers compensation board on August 29, 2019, have not been reimbursed to him by the District.

70.     On January 6, 2020, Mr. Santana, teaching assistants, and the students entered classroom 123 at Mount Vernon High School for their regularly scheduled class and noticed a very strong noxious stench of chlorine.

71.     Efforts to effectively rid the room of the chlorine odor proved unsuccessful and, as a matter of student health, Mr. Santana felt it best to evacuate the students and Teaching Assistants from the classroom.

72.     Upon inspection, Mr. Santana saw a white film across chairs and desks. An Assistant Principal Richie Stanley arrived and called for the head custodian.

73.     As a result of exposure to these chlorine fumes, Mr. Santana developed respiratory problems and a severe headache, and continues to suffer from these symptoms.

74.     On or about January 8, 2020, Principal Gonzalez had Mr. Santana's classroom assignment changed to Room 122. Principal Gonzalez was aware that Mr. Santana was to have limited movement, and in changing his classroom assignment, he forced Mr. Santana to now have to travel each day between Rooms 122, 142 and 134.

75.     On or about February 24, 2020, Principal Gonzalez sent a disciplinary letter to Mr. Santana for non-attendance at a scheduled parent-teacher conference.  Mr. Santana provided Principal Gonzalez email correspondence sent to Assistant Principal Palmer-Pearce and special education supervisor Ms. Learry, indicating that he was ill on that particular day.  Mr. Santana requested that the disciplinary action be removed from his personnel file, yet to date, his request has not been acknowledged or amended by school administration.

76.     On February 24, 2020, Mr. Santana received an email from the school district's attorney Cliff A. Christophe that addressed the chlorine incident which had

occurred on January 6, 2020.  Attorney Christophe referenced an air quality test that had taken place 29 days after the incident and cited that this test yielded no conclusion of airborne contaminants and the matter was now closed.  However, Attorney Christophe's response ignores that the District is in violation of New York State Public Employees Safety and Health law, 29 CFR Section 1910.1020, which requires upon request that the results of the air quality tests must be provided within 15 days.

77.     Mr. Santana continues to be treated due to the chlorine poisoning incident which occurred on January 6, 2020.

78.     Mr. Santana requested and received a right to sue letter from the EEOC, dated January 28, 2020, following the filing of his SDHR complaint, and timely files this complaint within 90 days of receipt of the right to sue letter.

## STATEMENT OF FACTS ON BEHALF OF BRENDAN DUFFY

79.     Brendan Duffy is a tenured mathematics teacher who has been teaching within the Mount Vernon City School District since August 2005**.**  Mr. Duffy is 54 years old, born in 1965.  Beginning in 2005, he taught at Mount Vernon High School.

80.     Brendan Duffy is disabled under the definition of the ADA and has been disabled since January 2010 due to arthroscopic meniscus surgery to his right knee.

### 2010-11 School Year

81.     In the 2010-11 school year, Mr. Duffy worked as a mathematics teacher at the Mount Vernon High School, and had requested a reasonable accommodation in August 2010 for a first-floor classroom because of the knee surgery in March 2010.

82.     In October 2010, Mr. Duffy was selected to participate in technology training on the second floor of Mount Vernon High School.  Mr. Duffy asked the technology supervisor at the time, Joseph McGrath, for a reasonable accommodation, which would allow Mr. Duffy to attend the training which was being held on the second floor.  In response to this request, Mr. Duffy was told on multiple occasions by Mr. McGrath, that it is not his job to accommodate Mr. Duffy, and Mr. Duffy was not able to do all of the training and did not get all hours for this professional development training.

83.     On April 9, 2011, Mr. Duffy filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) based on disability discrimination pursuant to the ADA, for the District refusing to accommodate Mr. Duffy's disabilities.

### 2011-12 School Year

84.     In September 2011, Ronald Gonzalez became principal of Mount Vernon High School, and moved the math department to the second floor.   Mr. Duffy had to remain on the first floor apart from his colleagues given his need for the first-floor accommodation.

85.     In September 2011, Principal Gonzalez relocated the Mount Vernon High School Math department to the second floor of the school. Since the elevator within the school regularly failed inspection, Mr. Duffy was placed in Room 185, a first-floor room that contained mold and live electrical wiring, and apart from his colleagues in the mathematics department.

86.     Mr. Duffy was assigned a first-floor room with black mold and exposed live electrical wires, and on multiple occasions, Mr. Duffy notified Principal Gonzalez as to the

poor conditions of the classroom, yet nothing was ever done for months to remedy those conditions.

87.     Finally, on November 2, 2011, after approximately two months, at the discretion of the head custodian, Mr. Duffy was told to relocate rooms at Mount Vernon High School to Room 181.

88.     On November 3, 2011, Mr. Duffy observed broken pieces of wood and shattered glass in his new room in Room 181.  Mr. Duffy removed these items from the room in an effort to keep him and his students safe.

89.     However, in response to Mr. Duffy removing these potentially dangerous materials from Room 181, on November 4, 2011, Assistant Principal Cassandra Hyacinthe told Mr. Duffy that he was being written up for damaging school property, and gave him a disciplinary letter to be put in his personnel file.  He was then sent to the Mount Vernon District Office and directed to sit there for the remainder of the day until he was returned to his duties after a day and a half.

**2012-13 School Year**

90.     On September 4, 2012, Mount Vernon High School Principal Gonzalez called Mr. Duffy into a meeting and told him that he was being involuntary transferred to the A. B. Davis Middle School (DMS).

91.     While at DMS, contradictory to the teacher observation policy which stipulates that teachers are to be observed twice per school year, once unannounced and the other time announced, Mr. Duffy was observed a total of twelve times by the DMS math department supervisor Marilyn Anderson.

92.    On multiple occasions in October 2012, after repeatedly asking for lesson plans which Mr. Duffy had already supplied her with, during a department meeting, Ms. Anderson held up Mr. Duffy's lesson plans and stated, "these are not lesson plans".

93.    On November 5, 2012, Ms. Anderson gave Mr. Duffy a disciplinary letter regarding his lesson plans, and falsely claimed he was not tenured.

94.    In response to the letter issued to Mr. Duffy's file, a meeting was scheduled with union representatives, Ms. Anderson, and Mr. Duffy. The union representatives told Ms. Anderson that she had violated Mr. Duffy's teachers' contract, and the lesson plans he had been submitting were correctly formatted and acceptable.

95.    Throughout the school year, Ms. Anderson rebuked Mr. Duffy for sitting on a radiator during cafeteria duty, which he needed to do because of his disability related to his leg injury.

96.    On April 18, 2013, and May 21, 2013, Mr. Duffy was never informed by Ms. Anderson of Mathematics department meetings that took place without him.

97.    Throughout the remainder of the 2012-13 school year, upon information and belief, Ms. Anderson would regularly ask colleagues who worked closely with Mr. Duffy about his performance and personality.

**2013-14 School Year**

98.    At the beginning of the 2013-14 school year at DMS, Ms. Anderson initially assigned Mr. Duffy to Room 201, a classroom on the second floor. Because of Mr. Duffy's leg injury, he must work on the first floor, and Mr. Duffy notified his union immediately regarding this assignment, and was left without a classroom for several days until he was

assigned a ground floor classroom on September 16, 2013.  Mr. Duffy submitted a request

for a transfer back to the high school that year, which was denied.

99.     On September 20, 2013, Mr. Duffy submitted a time-stamped harassment

complaint with the District's human resources department detailing the hostile work

environment he was subjected to by Ms. Anderson since being transferred to DMS.  He did

not receive a response to that complaint until June 6, 2016, almost four years later, as

explained below.

100.    On September 24, 2013, when he was going to sign into a math department

meeting, Mr. Duffy had the word "ABSENT" written where he was to sign it.  No other

teacher had his or her name marked "ABSENT" the same way.

101.    On several occasions in October 2013, Mr. Duffy asked Ms. Anderson for,

and was refused, a key to his classroom that he was ultimately assigned to meet his

reasonable accommodations, located on the ground floor, so he could lock his classroom.

102.    On October 17, 2013, during a 7th period class, Mr. Duffy was assaulted by

two students in his ground floor classroom and sustained a permanent work-related injury at

school related to his knees and neck, and has since filed and successfully been granted an

ongoing workers' compensation claim.  On that date, two middle school male students

entered Mr. Duffy's room while teaching a class, and shoved him into the classroom door,

causing him to hurt his knees and neck.

103.    Mr. Duffy was out of the work from October 21, 2013, until the remainder

of the 2013-14 school year, due to these on the job injuries.

## 2014-15 School Year

104.    Once again, at the beginning of the 2014-15 school year, despite his ongoing disabilities, Mr. Duffy was assigned to a classroom on the 3rd floor at DMS, in violation of his reasonable accommodations, by DMS Principal Joshua Whitham and Ms. Anderson. Mr. Duffy was eventually given access to a school elevator in the building that year.  Mr. Duffy again submitted a request for a transfer back to the Mount Vernon High School that year, which was denied.

105.    On April 13, 2015, District math and science supervisor Satish Jagnandan conducted an 84-minute unannounced observation of teacher Jason Stone's 7th grade math class during periods one and two, of which Mr. Duffy was the co-teacher.   During this observation, Mr. Stone prepared the lesson, taught the lesson, and assigned homework for the lesson, as it was a "B" day.  Mr. Duffy taught the 8th grade math classes only on "A" days as stipulated in the co-teaching assignment.    Nonetheless, as a result of this observation of Mr. Stone's teaching, Supervisor Jagnandan stated, on his observation report dated April 28, 2015, that he was observing Mr. Duffy, intentionally wrote Mr. Duffy's names in numerous different comment sections, and scored the lesson "ineffective" in 15 areas, and "developing" in one area. This instance reflects a clear and obvious attempt by the administration to sabotage Mr. Duffy.

106.    On June 25, 2015, Principal Whitham falsely wrote a report claiming he observed Mr. Duffy on the last day of school and where no students were in school.  Mr. Duffy was given a final rating of ineffective for the 2014-15 school year, even though he only had one required observation that year.  Mr. Duffy was forced to appeal that rating the

next year through the District procedure, upon which he eventually prevailed, and the rating was changed to an incomplete by Superintendent Hamilton.

### 2015-16 School Year

107.   For the 2015-16 school year. Mr. Duffy voluntarily transferred back to the Mount Vernon High School under Principal Gonzalez, and was assigned to room 124 at the high school.

108.   Upon entering room 124 at the high school, on September 1, 2015, the room was riddled with black mold, had spray painted graffiti on two blackboards in the back of the room, and had one blackboard missing entirely from the front of the room.  The room was never completely repaired to be a viable teaching environment at all during that school year.  It was filled with large pieces of broken furniture, was full of filth, and had a foul odor.

109.   As a result, Mr. Duffy was assigned to two different classrooms and had to teach the entire year in two different classrooms.

110.   On June 6, 2016, Mr. Duffy finally received a letter response to the internal hostile work environment claim he had filed against his math department supervisor Marilyn Anderson four years earlier, *during the 2012-13 school year*.   In the letter response, the District claimed it had completed its investigation and concluded that harassment did not occur at DMS, but that the administrator engaged in inappropriate verbal discourse and would be addressed accordingly.  Mr. Duffy was never told if anything was done against Ms. Anderson.

111.    Mr. Duffy received an "ineffective" annual teacher rating for the 2015-16 school year from Principal Gonzalez, even though he should have been rated effective for the year based on his student test scores.

## 2016-17 School Year

112.    Mr. Duffy returned to Mount Vernon High School again for the 2016-17 school year.  On multiple occasions during that school year, Mr. Duffy emailed Principal Gonzalez regarding a broken loudspeaker in the classroom he was assigned. Mr. Duffy never heard back from Principal Gonzalez, and the loudspeaker was never fixed.

113.    On September 20, 2016, Math Department supervisor Erica Naughton tried to put him on a Teacher Improvement Plan (TIP) even though he was not qualified for such a plan.

114.    On November 30, 2016, a stabbing occurred between students within the school, and Mr. Duffy and his students were unaware of what safety precautions and protocol were implemented because the loudspeaker was broken.  This negligence by the school administration put Mr. Duffy and the safety of his students in jeopardy.

115.    From December 5, 2016 until January 23, 2017, Mr. Duffy was absent from work due to his workers' compensation injuries relating to his neck and bilateral knee conditions.

116.    When he returned on January 24, 2017, Mr. Duffy found the padlock hasp on his closet door was cut and vandalized in his first-floor classroom by the custodian at the direction of the administration.  His class also was taken away from him and he was made a substitute teacher by Principal Gonzalez.   Mr. Duffy has never been reimbursed for the stolen padlock and damaged hasp.

117.    On March 20, 2017, Mr. Duffy met with his union representative Rich Suozzo, Principal Gonzalez, and Assistant Principal Palmer-Pearce, regarding his ineffective rating for the 2015-16 school year.   At this meeting, Mr. Duffy asked to see the alleged spreadsheet that was used to calculate his teacher score.  Principal Gonzalez became hostile towards Mr. Duffy upon his request, and refused to show him the spreadsheet or tell him who created it.

118.    On March 9, 2017, Mr. Duffy was given a new assignment to take attendance at school detention, and also was placed in a room full of black mold and with a foul odor.

119.    On April 3, 2017, Mr. Duffy was notified by Ms. Flowerman, a security officer at MVHS, that through walkie-talkies, administrators regularly tell officers and others to spy on Mr. Duffy and "check Mr. Duffy's room and see where he is" in the building.

120.    In late April 2017, Ms. Naughton fraudulently entered on the District's edvista network that she had pre-observation meetings with Mr. Duffy that did not occur.

121.    On May 12, 2017, Danielle Beechner, a math supervisor from another District high school, illegally did an unannounced formal observation of Mr. Duffy, rating him ineffective while he was supervising students in detention.

122.    Mr. Duffy was rated ineffective again for the 2016-17 school year based on one observation, but was eventually told in writing on October 23, 2017, it had been changed to Incomplete in the fall of 2017 based on his appeal through the District procedure by the Joint APPR Review Committee ("JARC").

## 2017-18 School Year

123.    Mr. Duffy returned to Mount Vernon High School again in the 2017-18 school year, and on September 8, 2017, Principal Gonzalez changed Mr. Duffy's teaching schedule by taking away two math classes and assigning him to two financial management classes outside of his teaching license area.

124.    On October 30, 2017, Mr. Duffy's personal clock was stolen off his wall, and on December 15, 2017, his personal property, including a beige garbage can, was stolen out of his classroom.

125.    Starting on May 1, 2017, the District had eliminated "workers' compensation" as a reason to be coded for at teacher's absence in the AESOP telephone system.  Principal Gonzalez also harassed him for his workers' compensation documents that year, which was a violation of Mr. Duffy's rights.  On December 19, 2017, during a meeting with Principal Ronald Gonzalez, he told Mr. Duffy that he must use sick bank days to cover for days he was out on his workers' compensation time, which has caused him to lose thousands of dollars in salary going forward.

126.    In January 2018, Principal Gonzalez intentionally withheld keys to the restroom from Mr. Duffy to deliberately inconvenience him. When Mr. Duffy sought help from the Assistant Superintendent to get the key, the Assistant Superintendent told him to take him off the emails, and ignored his request for several months.

127.    On February 16, 2018, Principal Gonzalez lied about Mr. Duffy's actions during a lockdown drill and mentioned that as a result he would be written up with a disciplinary letter.  After this meeting regarding the lockdown drill, Principal Gonzalez told Mr. Duffy to get out, and in front of four other employees, referred to him as a clown.

128.    On April 17, 2018, Principal Gonzalez told Mr. Duffy that he is not allowed to pick the day and class period of his formal observation, which is a violation of the teachers' contract, which states that a formal announced observation is to be agreed upon by the person being observed and by the observer.

129.    Furthermore, on April 17, 2018, Principal Gonzalez conducted a formal observation the same day of the pre-observation meeting, which is another violation of the teachers' contract.  Principal Gonzalez was a former gym teacher and had never rated him before.  Principal Gonzalez also interrupted Mr. Duffy's lunch period and told Mr. Duffy, "I tell you when you can eat lunch," which is a violation of the teachers' contract.

130.    On April 27, 2018, during Mr. Duffy's post-observation meeting, Mr. Duffy brought union representative Dave Israel with him to the meeting.  Principal Gonzalez lied and stated that Mr. Duffy could not have a union representative present for this meeting, forcing Mr. Israel to leave, which is a blatant lie and as a result Mr. Duffy was denied representation at this meeting.  Mr. Duffy was given intentionally low ineffective scores by Principal Gonzalez at this meeting.

131.    Mr. Duffy also appealed his ineffective rating for the 2017-18 school year, which he eventually won again on October 5, 2018, when Superintendent Hamilton converted the ineffective rating to an Incomplete rating.

**2018-19 School Year**

132.    On September 4, 2018, almost all of Mr. Duffy's personal math posters which had been stapled to the walls of his classroom were stolen. Mr. Duffy notified Ms. Naughton, Mount Vernon High School's math supervisor, who stated that she would look into it and get back to him. As of the filing of this document Ms. Naughton has never

addressed Mr. Duffy concerning the theft of his personal items nor was he reimbursed for the losses.

133.    In September 2018, Mr. Duffy was denied wearing shorts, which he does for medical reasons and has a doctor's notes allowing him to do so.

134.    On or about September 5, 2018, Mr. Duffy was assigned five non-regents Special Needs/Integrated co-teaching classes to teach for the 2018-19 school year at Mount Vernon High School with Ray Santana.

135.    These non-regents math courses consisted of approximately 186 students to teach over five classes during the school day, exceeding the standard number of students per teacher.  The number of students with disabilities in an integrated co-teaching class may not exceed 25 percent of the total class with a maximum of 12 students with disabilities on a class roster as per state law.   Furthermore, four out of five of these classes were not in compliance with New York State Education Department requirements as per the number of maximum special needs students per one class.

136.    When Mr. Duffy's co-teacher Ray Santana, the assigned Special Needs/ICT teacher, was absent from work for approximately four and a half months, from November 1, 2018, through March 15, 2019, with knee replacement surgery, the District did not provide Mr. Duffy a substitute teacher despite numerous emails requesting assistance.

137.    During the 2018-19 school year, the District made no accommodations to provide Mr. Duffy or Mr. Santana textbooks necessary to teach their 8th period statistics class, as noted above.    He also was given no chalk, teacher plan book, or statistics books for his students.

138.    Despite Mr. Duffy's numerous emails and requests to administration for textbooks, these textbooks, which were located on the second floor of the high school, were never brought to Mr. Duffy's classroom located on the first floor (room 118).  Mr. Duffy could not carry these books because of his on the job injuries and his medical restriction of no stair usage.

139.    On January 24 and 25, 2019, Mr. Duffy was not included or accommodated to grade the state Regents' exams on the second floor that year.

140.    On January 29, 2019, Assistant Principal Palmer-Pearce conducted a formal announced observation of Mr. Duffy's teaching. Assistant Principal Palmer-Pearce rated Mr. Duffy ineffective for the lesson, even though his coteacher Mr. Santana was absent that day.

141.    Mr. Duffy missed work due to his workers' compensation injuries from April 1, 2019, until April 22, 2019.  On Mr. Duffy's first day back from medical leave as a result of his workers' Compensation injury on April 23, 2019, although it was Mr. Duffy's first day back to teaching, Assistant Principal Palmer-Pearce conducted an unannounced formal observation, which violated a union contract provision which prohibits the same supervisor conducting both an announced and unannounced observation the same year. AP Palmer-Pearce rated Mr. Duffy ineffective for this unannounced observation as well.

Mr. Duffy was rated ineffective overall for the 2018-19 school year, which again was reversed by the JARC committee to an Incomplete on September 20, 2019, based on AP Palmer-Pearce's illegal ratings.

**2019-20 School Year**

142.    On September 4, 2019, Principal Gonzalez called Mr. Duffy into a meeting and notified him verbally and in writing that he was being involuntarily transferred to the Parker School (serving preK-8) within the Mount Vernon City School District.

143.    Mr. Duffy has been out on workers' compensation leave starting November 18, 2019, through March 27, 2020, due to a flareup to his knees and neck as he has had to travel to three different classrooms this school year.  He has yet been restored to payroll. The last time he has been paid by the District to date is December 31, 2019.

144.    Mr. Duffy filed a charge of discrimination against the District with the U.S. Equal Employment Opportunity Commission (EEOC) on or about January 23, 2020, based on discrimination, retaliation, and an ongoing hostile work environment.

145.    Mr. Duffy requested and received a notice of right to sue letter from the EEOC, dated February 15, 2020, a copy which is annexed hereto.


**FIRST CLAIM FOR RELIEF**

**(Against Defendant District by Both Plaintiffs – Disability Discrimination for Failure to Reasonably Accommodate, Retaliation for Seeking Disability-Related Accommodations, and Hostile Work Environment based on Disability Under the ADA)**


146.    Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint, as if fully set forth herein.

147.    Defendant District, through the aforementioned conduct, has violated the Americans with Disabilities Act (ADA), by discriminating against Plaintiffs due to their disabilities and in retaliation for filing protected discrimination charges with the SDHR

and/or EEOC, by failing to reasonably accommodate their disabilities, and by subjecting them to a hostile work environment because of their disabilities.

148.    Defendant District also has subjected Plaintiffs to a severe and pervasive hostile work environment insofar as, despite being aware of their disabilities, *inter alia*, giving them assignments that required excessive walking and stair climbing, and repeatedly not accommodating their disability-related requests.

149.    As a result, Plaintiffs have suffered damages to be determined at trial.

## SECOND CLAIM FOR RELIEF

**(Against Defendant District by both Defendants-- Age Discrimination, Retaliation, and Hostile Work Environment in Violation of the ADEA)**

150.    Plaintiffs repeat and reallege each and every allegation contained above, inclusive, with the same force and effect as if more fully set forth herein.

151.    In comparison with their similarly situated younger colleagues, such as Glen Beram, a favored math teacher at Mount Vernon High School by the administration, Plaintiffs have been discriminated and retaliated against based on their age and subject to a hostile work environment based on their age.

152.    As a result, Plaintiffs have suffered damages to be determined at trial.

## THIRD CLAIM FOR RELIEF

**(Against All Defendants by Plaintiff Duffy- Disability and Age Discrimination Under the New York State Division of Human Rights Law)**

153.    Plaintiff Duffy repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

154.    Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law, by discriminating against Plaintiff Duffy due to his disabilities and age, and in retaliation for filing protected discrimination charges with the EEOC, and by failing to reasonably accommodate his disabilities and subjecting him to a hostile work environment.

155.    As a result, Plaintiff Duffy has suffered damages to be determined at trial.


**FOURTH CLAIM FOR RELIEF**

**(Injunctive relief on behalf of Ray Santana relating to ADA failure to reasonably accommodate his disability)**

156.    As part of his ADA failure to reasonably accommodate claim above, Mr. Santana respectfully requests that so as not to cause further physical or mental harm to himself by the District, the Court compel Defendant District to reasonably accommodate his disabilities by either:

(a) placing him as a librarian at the Mount Vernon High School which is in critical need and Mr. Santana's certifications qualify him as such as well as having successfully performed such duties previously in the Mount Vernon City School District; or alternatively, grant him

(b) a leave of absence with pay.


**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

## PRAYER/DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants as follows:

a.    Judgment declaring that Defendants' acts violated Plaintiffs' rights as secured by federal and state law prohibiting discrimination and retaliation in employment;

b.    Enjoining Defendants from any further acts adversely affecting the terms and conditions of Plaintiffs' employment including their compensation and privileges;

c.    Compensatory damages to compensate Plaintiffs for economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

d.    Punitive damages against one or all of the Defendants;

e.    Statutory attorneys' fees, interest, costs, and disbursements, and

f.    For such other and further legal, equitable or other relief as the Court deems just and proper.

DATED:    New York, New York
          April 23, 2020

                    GLASS HARLOW & HOGROGIAN LLP
                    85 Broad Street, 18th Floor @ WeWork
                    New York, NY 10004
                    (212) 537-6859

          By:    s/ *Bryan Glass*
                 BRYAN GLASS, ESQ.

32