UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAY SANTANA and BRENDAN DUFFY,

                                  Plaintiffs,

          -against-

MOUNT VERNON CITY SCHOOL
DISTRICT/BOARD OF EDUCATION, KENNETH
HAMILTON, DENISE GAGNE-KURPIEWSKI,
FELICIA GAON, RONALD GONZALEZ,
PAULINE PALMER-PEARCE, ERICA
NAUGHTON, and SATISH JAGNANDAN,

                                  Defendants.

---

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:   09/30/2021 |

No. 20-cv-3212 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Raymond Santana ("Santana") and Brendan Duffy ("Duffy" and, together with

Santana, "Plaintiffs"), initiated this action on April 23, 2020 alleging violations of the Americans

with Disabilities Act, 42 U.S.C. § 12112 ("ADA"), the Age Discrimination in Employment Act

of 1967, 29 U.S.C. § 621-624 ("ADEA") and N.Y. Executive Law § 296 ("NYSHRL"), against

the Mount Vernon City School District and Board of Education (the "District"), Superintendent

of Schools Kenneth Hamilton, Assistant Superintendent for Human Resources Denise Gagne-

Kurpiewski, Director of Student Services Felicia Gaon, Mount Vernon High School Principal

Ronald Gonzalez, Mount Vernon High School Assistant Principal Pauline Palmer-Pearce, Mount

Vernon High School Mathematics Department Supervisor Erica Naughton, and District

Supervisor of Mathematics and Science Satish Jagnandan (collectively, "Defendants").  (ECF

No. 1.)

Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). (ECF No. 31.)  For the following reasons, Defendants'

motion is granted in part, and denied in part.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint (ECF No. 5) and are accepted as true and construed in the light most favorable to the non-movant Plaintiffs for purposes of this motion.[1]

### I.    Ray Santana

Santana is a 63-year-old, disabled Vietnam war veteran who previously served in the United States Air Force. (Compl. ¶ 17.)  While serving as an airman, on September 23, 1975, Santana injured his left knee. (*Id*. ¶ 18.)  He was honorably discharged from service due to his injuries. (*Id*. ¶ 19.)

Beginning in September 2001, Santana worked for the Mount Vernon City School District as a technology teacher, special education teacher, and library media specialist. (*Id*. ¶ 20.)  He obtained permanent certifications from the New York State Department of Education for elementary education and special education, and certification as a school media specialist. (*Id*. ¶¶ 21-22.)  On December 8, 2011, Santana injured his left knee while breaking up a fight between students. (*Id*. ¶¶ 18, 46.)  Additionally, on October 17, 2013, Santana was attacked by students, which resulted in injuries to his neck and knees. (*Id*. ¶ 56.)

---

[1] Defendants also filed the Declaration of Gerald S. Smith with their motion, that attached a copy of Plaintiff Santana's 50-h examination transcript. (ECF No. 32.)  Defendants argue it is appropriate for the Court to consider this testimony because "portions of that testimony directly contradict some of the allegations" and "consideration of that testimony is necessary in order to determine whether the allegations in Plaintiffs' Complaint satisfy the good faith pleading requirements of Fed. R. Civ. P. 11." (MOL at 3 n.2.)  However, when evaluating a complaint under Rule 12(b)(6), "consideration is limited to the factual allegations in [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," *Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), as well as documents "upon which [the complaint] solely relies and which [are] integral to the complaint," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Here, Defendants have failed to make a showing that the 50-h testimony is incorporated into or integral to the Complaint. *See Williams v. City of New York*, 14-cv-5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015) ("A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint.").  The Court will not consider the declaration or Santana's 50-h examination transcript attached thereto.

From September 6, 2016 to June 24, 2017, Santana was assigned to be a school librarian and media specialist at Mandella Zollicoffer Alternative High School. (*Id*. ¶ 23.) On multiple occasions, Santana was observed and praised for his work as school librarian, and he also received a "glowing" letter of recommendation from his supervisor. (*Id*. ¶¶ 24-26.)

In September 2017, due to a program reduction, the District assigned Santana to work as a special education teacher at Mount Vernon High School. (*Id*. ¶ 27.) When he arrived, Santana found that he was assigned to a room that lacked chairs, desks, computers, and a blackboard, and it was filled with trash. (*Id*. ¶ 29.) Given these issues, he reached out to Defendant Gonzalez about the materials he needed, and he did not receive a response to his inquiry. (*Id*. ¶ 30.) He followed up several days later, to which Gonzalez replied "[y]ou are expected to deliver instruction to your students. You do not need a teacher's desk to provide instruction." (*Id*. ¶ 31.)

On or around September 20, 2017, Santana met with Defendant Hamilton regarding his employment status. (*Id*. ¶ 32.) They discussed the conditions of Santana's classroom, and Hamilton called Gonzalez to discuss Santana's complaints. (*Id*.) Hamilton then informed Santana that Gonzalez wanted to see him in his office. (*Id*.) Santana then met with Gonzalez, who was in "an extremely agitated state," and "berat[ed]" Santana, stating he was teaching in the wrong room. (*Id*. ¶ 33.) When Santana showed Gonzalez the paperwork that assigned him to the room he had been using, Gonzalez told him to use a different room instead. (*Id*.)

Santana began the 2018-2019 school year still recuperating from his knee injury from 2011. (*Id*. ¶ 37.) He was assigned "five non-regents mathematics courses as a special education teacher at Mount Vernon High School." (*Id*. ¶ 38.) Although Defendants Gonzalez was aware of Santana's work-related injuries, he and Defendants Palmer-Pearce and Naughton assigned

him approximately 186 students over five periods of the school day, averaging 37 students per class.  (*Id*. ¶ 40.)  A typical class consists of 24 students.  (*Id*. ¶ 41.)  Four of the five classes were non-compliant with New York State special education regulations because they were each populated with greater than 12 special needs students or over one quarter special needs students. (*Id*. ¶ 42.)  Santana emailed Gonzalez, Palmer-Pearce, and Naughton multiple times requesting a reduction in student class size, but they took no action.  (Id. ¶¶ 44-45.)  Additionally, Santana's injury prevented him from using the stairs, so he could not retrieve the statistics textbooks needed for one of the classes.  (*Id*. ¶ 43.)

In November of 2018, Santana underwent knee replacement surgery as a result of his prior injury.  (*Id*. ¶ 46.)  He was out of work from November 1, 2018 to March 15, 2019.  (*Id*.) When he returned, his assigned workload remained virtually unchanged.  (*Id*. ¶ 47.)  From March 15, 2019 through June 12, 2019, Santana sent a total of ten emails to Defendant Palmer-Pearce, detailing nineteen days where no teaching assistance was provided.  (*Id*. ¶ 49.)

On or around March 18, 2018 and again on October 8, 2019, Santana requested several accommodations by completing and filing documents with the District's Human Resources Department and Gonzalez.  (*Id*. ¶¶ 50-51.)  The forms were filled out by Santana's primary physician and included requests for (1) no stair climbing; (2) repositioning every 10-15 minutes; (3) no prolonged sitting or standing; (4) ergonomic seating; (5) the use of a cane for assistance with locomotion; and (6) placement with students with stable behavioral outlooks.  (*Id*. ¶ 52.) Santana also sought accommodations as a "disabled Vietnam Veteran" based on a letter from the Director of the Danbury Veterans' Center, requesting (1) ergonomic seating; (2) additional time for reports; (3) voice to text assistance; (4) quiet area during authorized break; and (5) supportive staff when available.  (*Id*. ¶ 53.)  Santana did not receive any of the requested accommodations.

(*Id*. ¶¶ 53-54.)  On April 1, 2019, Santana filed a discrimination charge with the New York State Division of Human Rights ("SDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging disability and age discrimination and retaliation.  (*Id*. ¶ 55.)

On June 8, 2019, Santana was scheduled to proctor an exam on the second floor.  (*Id*. ¶ 58.)  After informing Gonzalez that he could not access that floor, a school safety officer was sent to his classroom to ensure Santana attended to his proctoring duties.  (*Id*.)  Through a walkie-talkie, Gonzalez demanded Santana proctor the exam.  (*Id*. ¶ 59.)  Santana was forced to use the stairs, which caused him pain.  (*Id*.)  Santana also claims he was not accommodated as the District did not consider him for a more sedentary, librarian position, even though there were multiple openings for such a position.  (*Id*.)

Santana was assigned to teach special education classes for the 2019-2020 school year. (*Id*. ¶ 60.)  At this time, Santana was recovering from left hip surgery, as his left hip was replaced as a result of his knee injury.  (*Id*.)  On the first day of school, Gonzalez changed Santana's class schedule to lower functioning special needs and alternative education students. (*Id*. ¶ 61.)  On or around October 9, 2019, Santana presented Gonzalez with a letter from his physician requesting that he be placed with students with stable behavior outlooks to reduce his risk of injury.  (*Id*. ¶ 62.)  Gonzalez refused to amend Santana's schedule.  (*Id*.)  Then, on or about October 10, 2019, Palmer-Pearce informed Santana that the Sundown Academy would schedule him as a resource room teacher for one of his periods.  (*Id*. ¶ 63.)  The Sundown Academy is a segregated learning program within the high school for students with "particular unstable emotional behavioral issues and academic deficiencies."  (*Id*.)

On or about October 17, 2019, Santana began to send emails to Gonzalez and Palmer-Pearce discussing the "hostile educational environment" of one of his classrooms that contained

broken desks, chairs, computers, and piles of trash.  (*Id*. ¶ 64.)  He also followed up with photographs.  (*Id*.).  Additionally, he was denied a key to access one of his classrooms, and as a result he and his class had to wait in the hallway until someone came to unlock it.  (*Id*. ¶ 65.)

On or about November 4, 2019, Santana was notified by the District's Human Resources Division that his accommodation requests were deemed unreasonable.  (*Id*. ¶ 67.)  He received an email from Defendant Gaon summarizing why this decision was made, including "threats of disciplinary action alleging insubordination" for "not properly performing his job duties."  (*Id*. ¶ 68.)  As of the date the Complaint was filed, Santana's requests were unaddressed, and he had not been reimbursed for sick days provided by the workers compensation board.  (*Id*. ¶ 69.)

On January 6, 2020, Santana's classroom had a very strong chlorine smell.  (*Id*. ¶ 70.) Upon inspection, Santana observed a white film across the classroom materials.  (*Id*. ¶ 72.)  As a result of this incident, Santana developed respiratory problems and a severe headache, which he continues to suffer from.  (*Id*. ¶ 73.)  Santana eventually received an email from the District's attorney stating the air quality test run 29 days after the chlorine incident showed no airborne contaminants, and therefore the matter was closed.  (*Id*. ¶ 76.)

On or around January 8, 2020, Gonzalez had Santana's classroom assignment changed, which resulted in him having to travel each day between three rooms.  (*Id*. ¶ 74.)  Additionally, on or around February 24, 2020, Gonzalez sent a disciplinary letter to Santana for missing a parent-teacher conference.  (*Id*. ¶ 75.)  Santana provided Gonzalez an email he sent to Palmer-Pearce indicating that he was ill that day, and requested the disciplinary action be removed.  (*Id*.) As of the dated of the Complaint, his request was not acknowledged.  (*Id*.)

Santana requested and received a right to sue letter from the EEOC, dated January 28, 2020.  (*Id*. ¶ 78.)

II.      *Brendan Duffy*

Duffy is a 54-year-old tenured mathematics teacher who began working for the District in August of 2005.  (*Id*. ¶ 79.)  In January of 2010, he had arthroscopic meniscus surgery to his right knee.  (*Id*. ¶ 80.)

Duffy worked as a mathematics teacher at Mount Vernon High School for the 2010-2011 school year.  (*Id*. ¶ 81.)  In August of 2010, he requested an accommodation for a classroom on the first floor.  (*Id*.)  In October of 2010 Duffy was selected to participate in a technology training on the second floor of the school.  (*Id*. ¶ 82.)  Duffy asked for an accommodation so he could attend the training, but he was told multiple times by the technology supervisor that it was not his job to accommodate, and therefore Duffy was unable to participate in the entire training. (*Id*.)  On April 9, 2011, Duffy filed a formal complaint with the EEOC based on disability discrimination.  (*Id*. ¶ 83.)

In September 2011, Gonzalez became principal, and moved the math department to the second floor.  (*Id*. ¶ 84.)  Duffy was placed in a first-floor classroom with mold and live electrical wiring, away from his colleagues.  (*Id*. ¶ 85.)  Duffy notified Gonzalez about these conditions, but nothing was done.  (*Id*. ¶ 86.)  After approximately two months, Duffy was relocated to a different classroom.  (*Id*. ¶ 87.)  On November 3, 2011, Duffy noticed broken pieces of wood and shattered glass in his new room, which he removed for safety.  (*Id*. ¶ 88.)  In response, Duffy was written up for damaging school property, and given a disciplinary letter. (*Id*. ¶ 89.)

On September 4, 2012, Gonzalez informed Duffy that he was being transferred to A.B. Davis Middle School (the "Middle School").  (*Id*. ¶ 90.)  At the Middle School, Duffy was observed twelve times by the math department supervisor, in violation of the teacher observation

policy.  (*Id*. ¶ 91.)  Duffy was repeatedly asked for lesson plans by this supervisor, and on November 5, 2012, he received a disciplinary letter that falsely claimed he was not tenured.  (*Id*. ¶¶ 92-93.)  In response, a meeting was scheduled with union representatives, who informed the supervisor that she had violated Duffy's teachers' contract.  (*Id*. ¶ 94.)  Additionally, throughout the year, Duffy was reprimanded multiple times for sitting on a radiator during cafeteria duty, which he needed to do to rest his leg.  (*Id*. ¶ 95.)

At the beginning of the 2013-2014 school year, Duffy was assigned to a classroom on the second floor.  (*Id*. ¶ 98.)  He notified his union immediately but was left without a classroom for several days. (*Id*.)  On September 20, 2013, Duffy submitted a harassment complaint to the District's Human Resources Department detailing the hostile work environment he was subjected to at the Middle School.  (*Id*. ¶ 99.)  He did not receive a response until 2016, almost four years later.  (*Id*.)

Duffy also was not informed of multiple math department meetings.  (*Id*. ¶ 96.) On September 24, 2013, Duffy went to sign into a math department meeting but noticed his name was marked "absent."  (*Id*. ¶ 100.)  His name was the only one with this marking.  (*Id*.) Additionally, in October of 2013, Duffy asked for a key to his classroom, but was refused.  (*Id*. ¶ 101.)  He was ultimately assigned a key.  (*Id*.)

On October 17, 2013, Duffy was assaulted by two students and sustained permanent injuries to his neck and knees.  (*Id*. ¶ 102.)  He filed claims and was granted workers' compensation.  (*Id*.)  Duffy was out of school from October 21, 2013 until the end of the 2013-2014 school year due to these injuries.  (*Id*. ¶ 103.)

At the beginning of the 2014-2015 school year, Duffy was assigned a classroom on the third floor.  (*Id*. ¶ 104.)  Duffy was eventually given access to a school elevator.  (*Id*.)

On April 13, 2015, Defendant Jagnandan conducted an unannounced observation in a math class that Duffy was co-teaching.  (*Id*. ¶ 105.)  While the co-teacher was in charge of teaching this day, Duffy was described as "ineffective" and "developing."  (*Id*.)  Additionally, on June 25, 2015, the principal wrote a false report claiming he observed Duffy on the last day of school when no students were in attendance.  (*Id*. ¶ 106.)  He gave Duffy a final rating of ineffective.  (*Id*.)  Duffy appealed this rating and eventually the rating was changed to incomplete.  (*Id*.)

For the 2015-2016 school year, Duffy was transferred back to Mount Vernon High School.  (*Id*. ¶ 107.)  His assigned classroom was filled with black mold, spray painted graffiti, a missing blackboard, broken furniture, and was dirty with a foul odor.  (*Id*. ¶ 108.)  These issues were never completely repaired.  (*Id*.)  As a result, Duffy was assigned an additional classroom, and had to travel between two different rooms all year.  (*Id*. ¶ 109.)

On June 6, 2016, Duffy received a letter response to his hostile work environment claim against his former math supervisor for the 2012-2013 school year.  (*Id*. ¶ 110.)  The District claimed it had conducted an investigation and concluded harassment did not occur, but the supervisor had engaged in "inappropriate verbal discourse" that would be addressed.  (*Id*.)  Duffy received an "ineffective" annual teacher rating for the year from Gonzalez, even though his test scores showed he should have been rated effective.  (*Id*. ¶ 111.)

Duffy returned to Mount Vernon High School for the 2016-2017 school year.  (*Id*. ¶ 112.)  His classroom had a broken loudspeaker and he notified Gonzalez about it multiple times.  (*Id*.)  He never heard back from him, and the speaker was never fixed.  (*Id*.)  A stabbing occurred during the school year, and Duffy and his students were unaware of the safety protocol due to the broken speaker.  (*Id*. ¶ 114.)

Then, on September 20, 2016, Defendant Naughton tried to put Duffy on a Teacher Improvement Plan ("TIP") even though this was not required based on his teaching skills. (*Id*. ¶ 113.) From December 5, 2016 through January 23, 2017, Duffy was absent from work due to his neck and knee injuries. (*Id*. ¶ 115.) When he returned, he learned that the padlock on his closet door was cut at the direction of administration. (*Id*. ¶ 116.) His class assignment was taken away and he was made a substitute teacher. (*Id*.)

On March 20, 2017, Duffy had a meeting with his union representative, Gonzalez, and Palmer-Pearce to discuss his ineffective rating. (*Id*. ¶ 117.) Gonzalez became "hostile" towards Duffy after he requested to see the spreadsheet used to calculate his score and refused to show it to him. (*Id*.)

On March 9, 2017, Duffy was assigned to take attendance at detention in a room with black mold and a foul odor. (*Id*. ¶ 118.) On April 3, 2017, Duffy was told by a security officer that administrators tell employees to "spy on" Duffy. (*Id*. ¶ 119.) Duffy also continued to have issues with observations. In late April of 2017, Naughton fraudulently stated that she had pre-observation meetings with him that did not occur. (*Id*. ¶ 120.) Then, on May 12, 2017, a math supervisor from another high school conducted an unannounced formal observation of Duffy and rated him ineffective while he was supervising students in detention. (*Id*. ¶ 121.) Duffy was rated ineffective for the 2016-2017 school year, but this was changed to incomplete after his appeal. (*Id*. ¶ 122.)

Duffy again returned to Mount Vernon High School for the 2017-2018 school year. (*Id*. ¶ 123.) He had multiple items stolen out of his classroom during the year. (*Id*. ¶ 124.) He also continued to have multiple problems specifically with Defendant Gonzalez, including that Gonzalez (i) removed two math classes from his schedule and gave him two financial

management classes outside of his teaching license area; (ii) "harassed" Duffy for his workers' compensation documents for the year, and told him he had to use sick days to cover any absences due to workers' compensation time; (iii) intentionally withheld keys to the restroom from Duffy; (iv) "lied" about Duffy's actions during a lockdown drill, and stated he would receive a disciplinary letter and referred to Duffy as a "clown" in front of other employees; (v) told Duffy he was not allowed to pick the day and class period for his formal observation and conducted a formal observation the same day of the pre-observation meeting, which are violations of the teachers' contract; (vi) interrupted Duffy's lunch during the observation by stating "I tell you when you can eat lunch"; and (vii) "lied" during a meeting with a union representative, by stating Duffy could not have the representative present during the meeting before proceeding to give him low ineffective scores. (*Id*. ¶¶ 123, 125-130.) Duffy received an ineffective rating for this school year, which he appealed and got amended to an incomplete rating. (*Id*. ¶ 131.)

At the beginning of the 2018-2019 school year, Duffy's math posters in his classroom were stolen. (*Id*. ¶ 132.) Defendant Naughton stated she would look into it, but she never got back to him. (*Id*.) Duffy was also denied his request to wear shorts, which he does for medical reasons with a doctor's note, and he was assigned five, non-regents special needs/integrated co-teaching classes to teach with Plaintiff Santana. (*Id*. ¶¶ 133-134.) As discussed, *supra*, these classes exceeded the standard number of students per teacher, and the number of students with disabilities. (*Id*. ¶ 135.) During Santana's work absence, the District did not provide Duffy with replacement teaching assistance, ignoring his repeated requests, and made no accommodations to provide Plaintiffs with their required textbooks and other materials. (*Id*. ¶¶ 136-138.) On January 29, 2019, Palmer-Pearce conducted a formal observation of Duffy and rated him

11

ineffective, even though his co-teacher was absent. (*Id*. ¶ 140.) Duffy was also not accommodated during the Regents' exams in January of 2019, which took place on the second floor. (*Id*. ¶ 139.)

Duffy missed work due to his injuries from April 1, 2019 until April 22, 2019. (*Id*. ¶ 141.) On his first day back, Palmer-Pearce conducted an unannounced formal observation, which violated a union contract provision, and she rated him ineffective. (*Id*.) Duffy was rated ineffective overall for the 2018-2019 school year, which was again reversed and changed to incomplete. (*Id*.)

On September 4, 2019, Gonzalez called Duffy into a meeting and notified him verbally and in writing that he was being transferred to the Parker School. (*Id*. ¶ 142.) From November 18, 2019 through March 17, 2020, Duffy was out of work on workers' compensation due to his knee and neck injuries. (*Id*. ¶ 143.) As of the date of the Complaint he had not been restored to payroll and his last paycheck was dated December 31, 2019. (*Id.*)

Duffy filed a charge of discrimination against the District with the EEOC on January 23, 2020, based on discrimination, retaliation, and an ongoing hostile work environment. (*Id*. ¶ 144.) He received a right to sue letter dated February 15, 2020. (*Id*. ¶ 145.)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

I.      **Statute of Limitations**

Defendants aver that any of Plaintiffs' ADA and ADEA allegations that occurred over 300 days before each of their EEOC complaints were filed are time-barred. (MOL at 3-5.) Duffy filed his EEOC complaint on January 23, 2020, and therefore his allegations that took place prior to March 29, 2019 are barred, while Santana filed his EEOC complaint on April 1, 2019, and therefore his allegations that took place prior to June 5, 2018 are also barred. (Compl.

¶¶ 55, 144.)  In response, Plaintiff claims the time-barred allegations can be considered using the continuing violation doctrine.  (Opp. at 27.)

A plaintiff who wishes to bring a claim under the ADEA or ADA must first file an EEOC discrimination charge within 300 days of the date of the alleged unlawful practice.  *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325–29 (2d Cir. 1999); *Harris v. City of New York*, 186 F.3d 243, 247–48 (2d Cir. 1999).  If not filed within this timeframe, the claim is time-barred.  *Staten v. City of New York*, No. 14 CIV. 4307(ER), 2015 WL 4461688, at *8 (S.D.N.Y. July 20, 2015) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)).

There is a "continuing violation" exception to the statute of limitations for discrimination claims.  *Harris*, 186 F.3d at 248.  The continuing violation doctrine states that if "a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 349 (2d Cir. 2001)).  "To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'"  *Dash v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017) (quoting *Morgan*, 536 U.S. at 115).  Examples of discrete acts "include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position," *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019), as well as "disparate pay, denials of accommodation and performance evaluations," *McGuirk v. Swiss Re Fin. Servs., Corp.*, No. 14 Civ. 9516 (CM), 2016 WL 10683305, at *9 (S.D.N.Y. June 17, 2016).  "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."

*Zabar v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6657 (PGG), 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).

Here, there do not appear to be any continuing violations for either Plaintiff.  Instead, the Complaint alleges various discrete acts against both Santana and Duffy.  While both Plaintiffs aver that they experienced the same injuries multiple times, including surprise observations, low performance reviews, and classrooms missing important materials, "even serial violations—a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine."  *Milani v. Int'l Bus. Machs.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004) (citing *Morgan*, 536 U.S. at 114).  Further, Plaintiffs' opposition papers fail to identify any specific continuing violation for either Plaintiff that started before their 300 days began and continued into that time period.[2]

Accordingly, Santana's allegations related to events that that took place before June 5, 2018 and Duffy's allegations related to events that took place before March 29, 2019 are time-barred and will not be considered by the Court.

## II.    ADA Reasonable Accommodation Claims

Plaintiffs both allege the District violated their rights under the ADA by failing to reasonably accommodate their disabilities.  (Compl. ¶¶ 147.)  The ADA provides that, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  An employer may violate the ADA by

---

[2] Plaintiffs instead point to the allegations of adverse actions that occurred within the 300 days.  They further discuss Plaintiff Santana's accommodation requests in the 2018-2019 school year that continued into the 2019-2020 school year (Opp. at 28), but these facts are inapposite to the continuing violation claim.  The 2018-2019 school year would have begun after June 5, 2018, and therefore any claims during this year and the year after are timely as to Santana.

failing to provide a reasonable accommodation.   A plaintiff states a prima facie failure to accommodate claim by demonstrating that

> (1) Plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his [or her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).   A reasonable accommodation to a disability is one that enables the employee "with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).   A reasonable accommodation may include job restructuring, modified work schedules, reassignment to a vacant position, acquiring or modifying work equipment, or trainings and policies, among other things.   42 U.S.C. § 12111(9)(B).   The Court separately analyzes the viability of each Plaintiffs' claims below.

      *A.*    *Santana*

      Plaintiff Santana made three accommodation requests after June 5, 2018.   On October 8, 2019, Santana requested accommodations including "no stair climbing, repositioning every 10-15 minutes, no prolonged sitting or standing, ergonomic seating, the use of a cane for assistance with locomotion, as well as an addendum letter requesting that Mr. Santana be placed with students with stable behavioral outlooks due to his injuries," and "ergonomic seating, additional time for reports, voice to text assistance, quiet area during authorized break, and supportive staff when available," which were all deemed unreasonable.  (Compl. ¶¶ 50-54, 62, 67-69.)  Santana also alleges he was not considered for a librarian position despite multiple openings in the District, and on or around October 9, 2019, he again requested to be placed with stable students, which was denied.  (*Id*. ¶¶ 59, 62.)

Defendants aver that Duffy has alleged no facts concerning any failure to accommodate his disability, and Santana failed to allege any plausible failure to accommodate claims, as (i) he failed to allege that he made a request to be reassigned as a librarian or that he is qualified for such a position, and there is no connection between this and his disability, (ii) he failed to allege that he made a request to be placed with students with stable behavioral outlooks during the 2018-2019 school year, and the Complaint shows that Santana is not qualified to perform essential functions of the job, and (iii) the rest of his requests are not clear based on the Complaint.  (MOL at 6-10.)  Plaintiff Santana responds that (i) the Complaint shows he was qualified to act as a librarian; (ii) his October 2019 requests were "outright refused" by the District; (iii) a request to work with stable students is not an admission that he is not qualified for his job, and (iv) the Court cannot consider the 50-h testimony submitted with Defendants' motion.  (Opp. at 29-30.)

In contrast to Defendants' contentions, Santana's October 2019 accommodation requests are clear from the Complaint.  (Compl. ¶¶ 52-53.)  At this time, Santana submitted a list of accommodation requests from his primary physician and the Danbury Veterans' Center.  (*Id.*)  Included was a request for Santana to work with students with stable behavior.  (*Id.* ¶ 62.)  These requests were subsequently denied.  (*Id.* ¶¶ 62, 67.)

Defendants' next argument appears to be that the request to work with stable students shows Santana could not perform the essential functions of his job.  However, that is exactly what the reasonable accommodation is supposed to assist with.  *See* 29 C.F.R. § 1630.2(o).  If the District placed Santana with special education students with stable behavior, he arguably would have to move around less, and would be less likely to reinjure his knee or neck.  The Court is not willing to dismiss Santana's reasonable accommodation claim at his stage.  *See*

17

*Tully-Boone v. North Shore-Long Island Jewish Hosp. Sys*., 588 F. Supp. 2d 419, 425 (E.D.N.Y. 2008) ("At this early stage, the Court is unwilling to find that such requests for accommodation were unreasonable as a matter of law.").

However, Santana does fail to allege any facts showing he requested a librarian position as an accommodation. Even if the "sedentary librarian position" is a reasonable accommodation for Santana's disability, there are no allegations that Santana ever requested such an accommodation or that it was ever denied by the District.

Accordingly, the District's motion to dismiss Santana's reasonable accommodation claim is denied.

B.    *Duffy*

Defendant argues that Plaintiff Duffy did not make any timely accommodation requests. Duffy responds by pointing to his requests for assistance while Santana was out of school, which were ignored by the District. (*Id*. at 31.) While Duffy claims that his requests for teaching assistance while Santana was on leave are timely, the Complaint fails to make this showing. Duffy argues that he "asked for assistance when Mr. Santana was out of school," (Opp. at 31), which took place from November 1, 2018 through March 15, 2019. (Compl. ¶ 136.) The Complaint states that once Santana returned on March 15, 2019, Duffy told him about the requests he had made. (Compl. ¶ 47.) Any requests that Duffy made while Santana was out of school were made before March 15, 2019 and are therefore untimely.

Accordingly, Duffy's reasonable accommodation claim is dismissed, without prejudice.

**II.    ADEA Discrimination Claims**

Plaintiffs allege that "[i]n comparison with their similarly situated younger colleagues," they "have been discriminated and retaliated against based on their age." (Compl. ¶ 151.) Under

the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection covers "individuals who are at least 40 years of age." *Id*. § 631(a). To state an ADEA discrimination claim, a plaintiff must allege that (1) he or she was "within the protected age group," (2) he or she was "qualified for the position," (3) he or she "experienced adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of East Haven*, 952 F.3d 394, 403 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp*., 596 F.3d 93, 107 (2d Cir. 2010)). On a motion to dismiss, a court "need determine only 'whether the allegations in the complaint give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of a litigation.'" *Miller v. Dep't of Educ.*, No. 17-CV-594 (JPO), 2018 WL 1468703, at *2 (S.D.N.Y. Mar. 23, 2018) (quoting *Dressler v. City Sch. Dist.*, No. 15-cv-3696 (JPO), 2016 WL 4367967, at *3 (S.D.N.Y. Aug. 15, 2016)).

Defendants aver that both Plaintiffs fail to plausibly allege any inference of discrimination based on age. (MOL at 16-17.) The Court agrees. In general, a plaintiff must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 484–85 (S.D.N.Y. 2017) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "An inference of discrimination can arise from a variety of circumstances, including but not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms based on [his or] her protected characteristic; [] its invidious comments about others in the employee's protected group; [] the more favorable treatment of employees not in the protected group; or the sequence

19

of events leading to the plaintiff's discharge." *Pustilnik v. Battery Park City Auth.*, No. 18-CV-9446 (RA), 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019) (internal quotation and citation omitted).

Here, Plaintiffs' only allegation is that a younger math teacher was "favored . . . by the administration."   (Compl. ¶ 151.)   This is not enough to create a plausible inference of discrimination under the ADEA.  *Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *12 (S.D.N.Y. Sept. 17, 2019) ("[W]ithout any reference to specific statements or individual circumstances that suggest discriminatory treatment, [a plaintiff's] allegations do not support a finding that defendants acted with a discriminatory purpose.") (quoting *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015)).  The Court is not persuaded by Plaintiffs' arguments that "senior teachers in the District were treated differently than other younger employees with regard to favorable work and classroom assignments" and Santana "was repeatedly not rehired for the librarian position over younger candidates despite being more qualified than them," (Opp. at 32), because a review of the Complaint reveals no facts regarding the treatment or qualifications of any younger teachers.

Accordingly, Plaintiffs' ADEA discrimination claims are dismissed without prejudice.

### III.    ADA and ADEA Retaliation Claims

Plaintiffs next allege that Defendants have retaliated against them for "filing protected discrimination charges with the SDHR and/or EEOC," and "based on their age."   (Compl. ¶¶ 147, 151.)  As discussed above, Santana filed a discrimination charge with the SDHR and EEOC on or around April 1, 2019, and Duffy filed formal complaints with the EEOC on or around April 9, 2011 and January 23, 2020.  (Compl. ¶¶ 55, 83, 144.)

It is well settled that retaliation claims under the ADEA and ADA are analyzed under the same framework. *Smith v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 8545 (PGG), 2019 WL 6307471, at *11 (S.D.N.Y. Nov. 25, 2019).  For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [him or her], (2) 'because' he [or she] has opposed any unlawful employment practice." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).  In the context of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted).  This is broader than the adverse action element of employment discrimination claims. *Moore v. Consol. Edison Co. of N.Y., Inc.*, No. 00 Civ. 7384(PAC), 2007 WL 831807, at *6 (S.D.N.Y. Mar. 20, 2007).

To plead causation, a plaintiff must allege "that his [or her] protected activity was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020).  At this stage, "a plaintiff can rely solely on temporal proximity to establish the requisite causal connection between her [or his] protected activity and the materially adverse action that she [or he] allegedly suffered in retaliation for engaging in that activity." *Wang v. Palmisano*, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016).  Although there is no bright line rule "to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), the "temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  To that end, "courts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship." *Graham v. Macy's, Inc*., No. 14 Civ.

3192 (PAE), 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016); *see also Knox v. Town of Southeast*, No. 11 Civ. 8763(ER), 2014 WL 1285654, at *11 (S.D.N.Y. Mar. 31, 2014) ("Indeed, many of the decisions in this Circuit that have addressed the issue have held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.").

In assessing Plaintiffs' retaliation claims, the Court will focus only on conduct that occurred after the alleged protected activity. *See Laface v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126, 150 (E.D.N.Y. 2018) (holding that there can be no retaliation for an ADA retaliation claim where the adverse action occurred prior to the protected activities). The Court separately analyzes the plausibility of each Plaintiff's claims below.

   *A.    Santana*

Santana avers that he suffered adverse actions "closely in time" after filing his discrimination charge, including ineffective observation, placement in an unsafe classroom, threats of insubordination, multiple classroom assignments, and disciplinary letters. (Opp. at 33-34.) Santana also appears to argue for the first time in his opposition that he was also retaliated against after he requested reasonable accommodations. (Opp. at 33.) Defendants do not dispute that requesting accommodations or filing discrimination charges are protected activity.

The Court holds that the majority of Santana's retaliation claims are insufficient. *First*, the "ineffective observation" was conducted on April 23, 2019, less than a month after Santana's charge was filed. (Compl. ¶ 57.) However, the Complaint does not allege any adverse action to Santana, as only Plaintiff Duffy was rated ineffective during this observation. (*Id.*) Second, Plaintiff has failed to plausibly allege that his discrimination charge was the "but-for" cause of these actions. A review of the Complaint shows that the other alleged adverse employment

actions occurred in or after October 2019 – *i.e.*, six months or more after the charge was filed. (*Id*. ¶¶ 62-63, 68, 74-75.)  Six months is too long to allow Santana's claim to rely on temporal proximity.  *See e.g., Graham*, 2016 WL 354897, at *9.

However, Plaintiff has adequately pled one adverse action close in time to his accommodation requests.  Plaintiff alleges he submitted his requests on October 8 and 9, 2019. (Compl. ¶¶ 50, 62.)  He also alleges he experienced retaliatory action shortly after, as Defendant Palmer-Pearce, aware of his requests, placed one of his class periods in the Sundown Academy the next day.  (*Id*. ¶ 63.)  The Court finds that this allegation is sufficient at this stage.

The remaining alleged retaliatory actions are still insufficient.  In contrast to Santana's argument, the Complaint states the "disciplinary threats of insubordination" were made because Santana was "not properly performing his job duties," not due to his requests.  (Compl. ¶ 68.) Additionally, the classroom assignments and disciplinary letters occurred more than two months after Santana made his requests, and therefore cannot rely on temporal proximity.  (*Id*. ¶¶ 74-75.) Lastly, while Santana claims to have been retaliated against "based on [his] age," this allegation is wholly conclusory, and the Complaint lacks any factual allegations that create even a plausible allegation of retaliation caused by Santana's age.

Accordingly, Defendants' motion to dismiss Santana's ADEA retaliation claim is granted and Santana's ADEA retaliation claim is dismissed without prejudice.  Defendants' motion to dismiss Santana's ADA retaliation claim is denied.

### B.    Duffy

Similarly, Duffy avers he suffered several adverse actions in retaliation to filing an EEOC charge and requesting accommodations, including "denial of Regents grading, an ineffective observation, and an ineffective overall 2018-2019 rating."  (Opp. at 34.)  Duffy's

claim also fails to plead causation because the temporal proximity between any adverse actions and his protected activity are too attenuated.  His first complaint was filed years before any of the alleged adverse actions, and the alleged adverse actions took place before he filed his second complaint in January of 2020.  Further, Duffy also fails to plead causation between the alleged adverse actions and his accommodation requests.  As discussed above, Duffy's requests for help while Santana was out of work are untimely.  (Compl. ¶ 136.)  Additionally, it is not clear from the Complaint when Duffy made his other cited requests for help obtaining textbooks. Therefore, the allegations are insufficient for the Court to deem the requests for accommodation within  close temporal proximity to the alleged adverse actions.

Additionally, Duffy's allegations involving age discrimination are wholly conclusory, and the Complaint lacks any factual allegations that create even a plausible allegation of retaliation caused by Duffy's age.

Accordingly, as pled, Duffy has failed to state plausible ADA and ADEA retaliation claims, and therefore these claims are dismissed without prejudice.

### VI.    ADA and ADEA Hostile Work Environment Claims

Plaintiffs allege they were subjected to a hostile work environment due to their disabilities and age because "despite being aware of their disabilities" they were given "assignments that required excessive walking and stair climbing," and the District "repeatedly" failed to accommodate "their disability-related requests," and that these failures were "based on their age." (Coml. ¶¶ 147-148, 151.)  An ADEA hostile work environment claim is governed by the same standards applicable to hostile work environment claims under the ADA. *Murtha*, 2019 WL 4450687, at *12.  To plead a *prima facie* hostile work environment claim, a plaintiff must plead "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of

his [or her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be 'severe or pervasive enough' that a reasonable person would find it hostile or abusive, and the victim must also subjectively perceive the work environment as abusive." *O'Hara v. Bd. of Coop. Educ. Servs.*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at \*14 (S.D.N.Y. Mar. 16, 2020) (citing *Fox*, 918 F.3d at 74.)

Additionally, a plaintiff must also allege that the conduct created such an environment "because of" his or her disability. *Id.* The Court must evaluate the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiffs'] work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).

Defendants aver that (i) Duffy has failed to allege any timely facts that support any allegations of a hostile work environment, (ii) Santana fails to allege that any of the conditions he faced were because of his disability, and (iii) neither Plaintiff has pled that he was subjected to a hostile work environment due to his age. (MOL at 13-14, 17-18.) In response, Plaintiffs allege that they have plausibly alleged a hostile work environment through denied accommodations and false negative ratings. (Opp. at 35-36.)

Neither Plaintiff has plausibly alleged an environment severe or pervasive enough to alter the conditions of his employment. Duffy only alleges one surprise observation that resulted in an "ineffective" rating during the relevant time, (Compl. ¶¶ 141), while Santana alleges several

unanswered or denied accommodation requests, (Compl. 49-54, 58-59, 61-63, 67-69, 74.)  These events are not sufficient for a hostile work environment claim.  Further, there are no facts that create a plausible inference that these events occurred *because* of their age or disabilities.

Accordingly, Plaintiffs' hostile work environment claims are dismissed.

## VII.    Duffy's NYSHRL Claim

Duffy alleges violations under the NYSHRL against all Defendants for "discriminating against [him] due to his disabilities and age, and in retaliation for filing protected discrimination charges with the EEOC, and by failing to accommodate his disabilities and subjecting him to a hostile work environment."  (Compl. ¶ 154.)  Defendants contend that Duffy's NYSHRL claim fails as to the District and its officers because he never filed a notice of claim as required by New York State Education Law § 3813(1) and fails as to the non-officers because he has not stated a claim against any of them.[3]  (MOL at 20.)

### A.    Notice of Claim Requirement

Duffy seemingly concedes that no notice of claim was ever filed, but argues Defendants were on notice through Duffy's filings with the EEOC (Opp. at 37.)

New York Education. Law § 3813(1) requires that plaintiffs file a notice of claim prior to any action against a school district or its officers.  N.Y. Educ. Law § 3813(1).

> The term "school officer" means a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

---

[3] Defendants also argue that New York General Municipal Law requires a notice of claim for an action based on the NYSHRL, however this is not accurate.  *See Margerum v. City of Buffalo*, 24 N.Y.3d 721, 727 (2015) (holding there was no General Municipal Law notice of claim requirement for a claim brought under the NYSHRL).

N.Y. C.L.S. Educ. § 2(13).  Principals are excluded from the statute.  *Mauro v. N.Y.C. Dep't of Educ.*, 19-CV-04372 (GBD) (KHP), 2020 WL 5899522, at *4 (S.D.N.Y. Apr. 29, 2020).  The notice must be filed within three months of the accrual of the claim.  N.Y. Educ. Law § 3813(1).  These requirements are "construed strictly," so "failure to abide by their terms mandates dismissal of the action."  *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011).  This requirement applies to claims brought under the NYSHRL.  *See Nelson v. Mount Vernon City Sch. Dist.*, No. 15-CV-8276 (KMK), 2017 WL 1102668, at *3 (S.D.N.Y. Mar. 23, 2017) ("NYSHRL claims that are brought against a school district, board of education, or school officer are subject to the notice of claim requirements contained in New York Education Law § 3813(1).") (internal quotation marks omitted).

However, an EEOC charge may satisfy the requirements of section 3813 so long as the EEOC charge: "(1) places the school district on notice of the precise claims alleged; and (2) is served on the party required by section 3813 within the statutory time period."  *Richard v. N.Y.C. Dep't of Educ.*, 16-CV-957 (MKB), 2017 WL 1232498, at *21 (E.D.N.Y. Mar. 31, 2017).

Here, while Duffy filed a charge of discrimination with the EEOC on or about January 23, 2020, (Compl. ¶ 144), there are no allegations in the Complaint regarding whether the notice contained the precise claims alleged, or that it was served on Defendants.  Therefore, this claim is dismissed as to the school and its officers, including Defendants Hamilton and Gagne-Kurpiewski.

B.   *Individual Defendants*

Assuming Gaon, Gonzalez, Palmer-Pearce, Naughton, and Jagnandan (collectively, the "Individual Defendants") are not considered school officers, the NYSHRL claim still fails on the merits.  The NYSHRL allows for individual liability under two theories: where the individual

defendant is considered an "employer," of the plaintiff, or where the individual defendant aided and abetted the unlawful discriminatory acts of others.   N.Y. Exec. Law § 296(1), (6); *see also Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521–22 (S.D.N.Y. 2015) (discussing the two theories of individual liability under the NYSHRL).   An "employer" under Section 296(1) "has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others."   *Townsend v. Benjamin Enters., Inc*., 679 F.3d 41, 57 (2d Cir. 2012) (internal quotation marks omitted).

The aiding and abetting provision makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6).   An individual may be liable for aiding and abetting unlawful discriminatory acts if the individual "actually participates in the conduct giving rise to a discrimination claim," even though that individual lacked the authority to hire or fire the plaintiff.   *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).   Further, as confirmed by Plaintiffs, (Opp. at 36-37), the NYSHRL has a statute of limitations of three years.   *Kimball v. Vill. of Painted Post*, 737 Fed. Appx. 564, 572 (2d Cir. 2018).   Therefore, the Court will only consider the allegations made against Individual Defendants on or after April 23, 2017.

Here, Duffy has not plausibly alleged that any of the Individual Defendants are "employers" under the NYSHRL, as "Section 2554(2) of New York Education Law vests the Board of Education with the power to appoint a superintendent, principals, and teachers, among other employees and personnel."   *Miotto v. Yonkers Pub. Schs*., 534 F. Supp. 2d 422, 427–28 (S.D.N.Y. 2008) ("Defendants, as superintendent and principal within the District, do not have the power to hire or fire a teacher.   Even though they have supervisory positions, and may advise the Board of Education in its personnel decisions of, that is not enough to hold them liable under

§ 296(1) . . . ."). Additionally, Duffy has failed to allege that any of the Individual Defendants aided or abetted any discriminatory acts during the relevant time period in the Complaint. Indeed, "an individual cannot aid and abet their own discriminatory conduct," *Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018), and Plaintiff Duffy fails to allege that any of the remaining Individual Defendants aided or abetted another's discriminatory or retaliatory conduct.

Further, while Duffy claims to have been denied certain accommodations during this time, (Compl. ¶¶ 133, 136-139), he is not clear about who he made these accommodation requests to or who denied them, instead referring generally to requests being denied, or to the District or "administration." (*Id.*) This is insufficient for individual liability.

Lastly, NYSHRL hostile work environment claims are evaluated under the same standards as ADA and ADEA discrimination claims. *See, e.g., Dipinto v. Westchester County*, 18-CV-00793 (PMH), 2020 WL 6135902, at *5 (S.D.N.Y. Oct. 19, 2020) (applying the same standard for claims brought for hostile work environment under the ADA and NYSHRL); *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 170; 176–77; 181 (E.D.N.Y. 2017) (applying the same elements for NYSHRL and ADEA discrimination, retaliation, and hostile work environment claims). As Duffy's claims under the ADA and ADEA have been dismissed, his NYSHRL claim also fails. As discussed above, Duffy has failed to allege that he faced a severe and pervasive hostile work environment, and this does not change with the addition of the facts determined to be untimely under the ADA and ADEA.

Accordingly, Plaintiff Duffy's NYSHRL claims are dismissed, without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED in part and DENIED in part.  The surviving claims include Plaintiff Santana's ADA claims against the District for retaliation and failure to accommodate his disabilities.  Plaintiffs are granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice.  If they choose to do so, Plaintiffs will have until November 30, 2021 to file an Amended Complaint consistent with this order.  Plaintiffs are advised that the Amended Complaint will replace not supplement the Complaint so any claims they want to pursue must be included in or attached to the Amended Complaint.  Defendants are then directed to answer or otherwise respond by December 30, 2021.

If Plaintiffs fail to file an Amended Complaint within the time allowed, and they cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.  If no Amended Complaint is timely filed, the District must answer the remaining claims against it on or before December 21, 2021.

The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 31.


Dated:   September 30, 2021                          SO ORDERED:
         White Plains, New York

                                        _____
                                              NELSON S. ROMÁN
                                           United States District Judge

30